UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NESTLÉ WATERS NORTH AMERICA
INC., a Delaware corporation,

       Plaintiff,

                                        File No. 1:06-CV-577

v.

                                        HON. ROBERT HOLMES BELL

DONALD PATRICK BOLLMAN and
NANCY GALE BOLLMAN, his wife,

       Defendants.
_____/

**O P I N I O N**

This matter is before the Court on Defendants' motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction, or in the alternative, to stay the action, and to compel arbitration. For the reasons that follow the Court will grant Defendants' motion and dismiss the complaint.

**I.**

Plaintiff, Nestlé Waters North America, Inc,[1] filed this action seeking a determination that Plaintiff's continued withdrawal of water from Defendants, Donald Patrick Bollman and Nancy Gale Bollman's,[2] property is not subject to the limits asserted by Defendants and that

---

[1] Until 2002 Plaintiff was known as Great Spring Waters of America, Inc. ("GSWA").

[2] In many of the underlying documents Defendants are referred to as Pat Bollman Enterprises ("PBE").

therefore Plaintiff is entitled to declaratory and injunctive relief. Defendants own approximately 868 acres of real property in Morton Township, Mecosta County, Michigan, which contains several fresh water springs and an aquifer. Plaintiff withdraws water from four groundwater wells on Defendants' Property for bottling and sale to the general public in interstate commerce.

On December 21, 2000, Plaintiff and Defendants signed a Purchase and Sale Agreement ("Purchase Agreement"). The Purchase Agreement divides Defendants' 868 acres into two parts: the "Sanctuary" and the "Property." (Purchase and Sale Agreement, Preamble, Defs.' Br., Docket #7, Ex. 2.) The Purchase Agreement provided for Plaintiff's acquisition from Defendants of "certain subsurface intervals beneath the Property and all of the water rights related to the Property . . . ." (Purchase and Sale Agreement ¶ 1.1(i).) In furtherance of the obligations in the Purchase Agreement, the parties executed a Subsurface and Water Rights Deed ("Deed"), a lease and an easement. (Subsurface and Water Rights Deed, Compl., Docket #1, Ex. A; Lease, Pl.'s Resp., Docket #9, Ex. 1; Easement Agreement, Pl.'s Resp., Ex. 2.) Unsigned versions of these three documents were also include as exhibits to the Purchase Agreement signed on December 21, 2000. (Purchase and Sale Agreement, Ex. C, D, E.) The parties have also executed a Land Use Restrictions Agreement for the Sanctuary and a Land Use Restrictions Agreement for the Property. (Pl.'s Br., Exs. 3, 4.)

At some point after the execution of the documents Defendants asserted that Plaintiff's wells were withdrawing water in a manner that violated the agreement between the parties.

2

The parties also dispute which documents provide the basis for the alleged violation. Plaintiff alleges that Defendants' claims are based on the text of the Deed. Defendants allege that the Purchase Agreement provides the basis for their claims. On August 11, 2006, Plaintiff filed this matter seeking declarative and injunctive relief. On September 1, 2006, Defendants filed this motion.

## II.

There is no dispute that the Purchase Agreement containing the arbitration clause is a "contract evidencing a transaction involving commerce," that is governed by the Federal Arbitration Act, 9 U.S.C. § 2. There is also no dispute that the Supreme Court has "long recognized and enforced a 'liberal federal policy favoring arbitration agreements.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

The parties do not dispute the validity of the contract or of the arbitration clause. However, the parties do dispute whether the alleged restrictions on Plaintiff's wells are subject to arbitration. As the dispute only concerns the interpretation of the arbitration clause no hearing is required.[3]

---

[3] Though 9 U.S.C. § 4 provides that "[t]he court shall hear the parties," this does not require the Court to hold a hearing prior to deciding this matter. *Cincinnati Gas & Electric Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 159 (6th Cir. 1983). Section 4 only requires a hearing if there is a question about the "making of the agreement to arbitrate or the failure to perform such an agreement . . . ." *Id.* In the matter before the Court, there is no question as to the making of the agreement, only a question of whether the claim is covered by the arbitration clause. *See id.* Also, there is no question about the failure to perform, as Plaintiff

The Purchase Agreement contains an arbitration clause which states in relevant part that:

> Except as provided in this section with respect to provisional or interim remedies, any controversy or claim ("Dispute") arising out of this Agreement between PBE and GSWA ("Disputing Parties"), which cannot be otherwise resolved by the Disputing Parties themselves, shall be settled by arbitration . . . .

(Purchase and Sale Agreement ¶ 8.1.) The Deed does not include an arbitration clause.

Plaintiff argues that Defendants' claims about the propriety of Plaintiff's wells are grounded in the Deed. From this Plaintiff makes two basic arguments. First, Plaintiff argues that the Deed is the document governing the dispute and because the Deed lacks an arbitration clause the dispute between the parties is not subject to arbitration. Second, Plaintiff argues that the arbitration clause in the Purchase Agreement only governs disputes about the enforcement of the Purchase Agreement itself. Therefore, Plaintiff argues, the dispute between the parties is not subject to arbitration.

Defendants argue that their claims about the propriety of Plaintiff's wells are grounded in the Purchase Agreement. Defendants further argue that the arbitration clause in the Purchase Agreement is broad, such that it encompasses more than just disputes which relate solely to the enforcement of the Purchase Agreement.

---

filed this matter to avoid being required to perform under the arbitration agreement, as is further demonstrated by Plaintiff's response to this motion. Therefore, no evidentiary hearing is required, because the Court is "only required to determine what the language used in the contract mean[s], a question of law." *Id.*; *accord Perceptics Corp. v. Societe Electronique et Systemes Trindel*, 907 F. Supp. 1139, 1144 (E.D. Tenn. 1992).

### A. Basis of the Dispute about the Propriety of Plaintiff's Wells

Defendants' claim that Plaintiff's withdraw of water is subject to two conditions. First, the "zone of contribution"[4] for the water withdrawn by Plaintiff must remain wholly within the boundaries of the Property. Second, Plaintiff may only withdraw water that absent the wells, would have emerged from springs on Defendants' 868 acres. Defendants contend that Plaintiff is now or in the future might draw ground water that travels outside of the boundaries of Defendants' property or that would not have emerged from springs on the Property.

Plaintiff contends that the claims Defendants seek to submit to arbitration "are based on [Defendants'] interpretation of the Deed, not the [Purchase] Agreement . . . ." (Pl.'s Br. 2.) Defendants' brief in support of this motion includes a copy of the petition that Defendants' intended to filed with the American Arbitration Association. (Defs.' Br. 1; Arb. Pet., Defs.' Br., Ex. 1.) Defendants contend that the claim to be submitted to arbitration is not based just on the Deed. This contention is consistent with the arbitration petition. The arbitration petition does cite to and discuss a portion of the Deed. (Arb. Pet. ¶¶ 8-9.) However, Defendants' petition also relies upon language in the Purchase Agreement, the lease and the Land Use Restrictions Agreement for the Sanctuary. (*Id.* at ¶¶ 10-13.) The

---

[4]The "zone of contribution" is the underground path traveled by water in the aquifer before it is captured by the wells. (Pl.'s Resp. 2.)

Lease,[5] the Land Use Restrictions Agreement for the Sanctuary[6] and the Land Use Restrictions Agreement for the Property,[7] all contain arbitration clauses. (Lease ¶ 18.08(a); Land Use Restrictions Agreement for the Sanctuary ¶2(f), Pl.'s Br., Ex. 4; Land Use Restrictions Agreement for the Property ¶ 2(f), Pl.'s Br., Ex. 3.)

Plaintiff's Complaint only discusses Defendants' claims about the wells in reference to the Deed. However, Plaintiff's framing of the relief requested is not limited to claims related to the Deed. Plaintiff seeks a declaration that it "is entitled to continue withdrawing water from the Wells without regard to the underground path traveled by the water molecules

---

[5]The Lease provides in relevant part:

> Except as provided in this section with respect to provision or interim remedies, any controversy or claim ("Dispute") arising out of this Agreement between Lessor and Lessee ("Disputing Parties"), which cannot be otherwise resolved by the Disputing Parties themselves, shall be settled by arbitration . . . .

(Lease ¶ 18.08(a).)

[6]The Land Use Restrictions Agreement for the Sanctuary provides in relevant part:

> Any controversy or claim arising out of or relating to this Agreement, or the breach of this Agreement, shall be settled by arbitration . . . .

(Land Use Restrictions Agreement for the Sanctuary ¶ 2(f).)

[7] The Land Use Restrictions Agreement for the Property provides in relevant part:

> Any controversy or claim arising out of or relating to this Agreement, or the breach of this Agreement, shall be settled by arbitration . . . .

(Land Use Restrictions Agreement for the Property ¶ 2(f).)

in the Source Aquifer before being captured by the Wells or the place where the water molecules would have emerged to the surface in the absence of the Wells . . . ." (Compl. 5.) The scope of the relief sought by Plaintiff would require consideration of any relevant agreement between the parties because the requested declaration is not limited to the rights afforded by the Deed.

For the purposes of this motion, the Court determines that in order for this dispute to be encompassed by the arbitration clause in the Purchase Agreement, the arbitration clause must encompass the Deed.  The Court bases this determination on the fact that the only claim before the Court is the claim presented by the complaint.  Though the complaint seeks a declaration that is broader than the claim based on the Deed, the allegations in the complaint are limited to the Deed.  Even though Defendants' argument about the wells is not based exclusively on the Deed, Defendants' argument about the wells is based in part on the Deed. Therefore, if the Deed, as it relates to the wells and the other documents, is not subject to arbitration, then the Court cannot dismiss for an absence of subject matter jurisdiction due to an applicable arbitration agreement.

### B.  Scope of the Arbitration Clause

"'[T]here is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Masco Corp. v. Zurich American Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Highlands Wellmont*

7

*Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003)). "If parties contract to resolve their disputes in arbitration rather than in the courts, a party may not renege on that contract absent the most extreme circumstances." *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000).

"'Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.'" *Masco*, 382 F.3d at 627 (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). As noted previously, the parties do not dispute the validity of the arbitration clause.

"[A] disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court." *Howsam*, 537 U.S. at 84. "Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration," and "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout*, 228 F.3d at 714 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). Although ambiguities in the contract should be resolved in favor of arbitration, the Court recognizes that arbitration is a matter of contract between the parties, and the Court will "'not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.'" *Albert M. Higley*

*Company v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006) (quoting *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)). When an arbitration clause broadly covers any disputes with respect to the interpretation or performance of a contract, "'[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steel Workers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584-85 (1960)). On the other hand, when an arbitration clause is narrowly drawn, the policy in favor of arbitration does not have as strong an effect. *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1262 (10th Cir. 2005).

The Court must determine whether the relevant part of the arbitration clause which provides that "any controversy or claim ("Dispute") arising out of this Agreement between PBE and GSWA . . . shall be settled by arbitration," encompasses the dispute. (Purchase and Sale Agreement ¶ 8.1.) The proper method for analyzing whether a dispute is within the scope of the arbitration clause "'is to ask if an action could be maintained without reference to the contract or relationship at issue.'" *Highlands Wellmont*, 350 F.3d at 576 (quoting *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003).

Plaintiff argues that the arbitration clause in the Purchase Agreement is narrow because "arising out of" is not accompanied by "relating to." *E.g.*, *Tracer Research Corp. v. National Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) ("[A]n arbitration clause

9

that covered disputes 'arising under' an agreement, but omitted reference to claims 'relating to' an agreement, covered only those disputes 'relating to the interpretation and performance of the contract itself.'" (quoting *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)); *In re Petition of Kinoshita & Co.*, 287 F.2d 951, 952-53 (2d Cir. 1961) (holding that "any dispute or difference [arising] under" only encompassed the interpretation and performance of the contract). In *Highlands Wellmont* the Sixth Circuit declined to follow *Kinoshita* and noted that several other circuits have also declined to follow *Kinoshita*. *Highlands Wellmont*, 350 F.3d at 577; *see also Battaglia v. McKendry*, 233 F.3d 720, 726-27 (3d Cir. 2000) (declining to follow *Kinoshita* and *Mediterranean Enterprises*); *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 385 (11th Cir. 1996) (declining to follow *Kinoshita*). Consistent with *Highlands Wellmont*, the Court declines to apply the narrow analytic framework of *Tracer Research*, *Mediterranean Enterprises* and *Kinoshita*. Moreover, the Sixth Circuit has determined that "arising out of" arbitration clauses are "'extremely broad.'" *Highlands Wellmont*, 350 F.3d at 578 (quoting *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983)).

In *Highlands Wellmont* the Sixth Circuit cited *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress International, Ltd.*, 1 F.3d 639 (7th Cir. 1993), with approval, though the *Highlands Wellmont* court did not explicitly adopt the analytic framework of *Sweet Dreams*. *Highlands Wellmont*, 350 F.3d at 577-78. The *Highlands Wellmont* court did "agree with the

reasoning of the Seventh Circuit in that a claim that a contract is voidable because it was fraudulently induced arises out of the contract." *Id.* at 578.

In *Sweet Dreams* the Seventh Circuit interpreted "arising out of" in an arbitration clause to reach "all disputes having their origin or genesis in the contract, whether or not they implicate interpretation, or performance of the contract per se." *Sweet Dreams*, 1 F.3d at 642. In applying this interpretation the Seventh Circuit concluded that the plaintiff's claims that the agreement violated Illinois law, that defendant unlawfully induced plaintiff to make expenditures after the expiration of the agreement and that defendant unlawfully interfered with plaintiff's business relationships, were all subject to arbitration. *Id.* at 640, 642-43. In the matter before the Court, the dispute about the alleged restrictions on Plaintiff's wells has it "origin or genesis" in the Purchase Agreement. Even if the dispute about Plaintiff's wells did not involve an interpretation of the Purchase Agreement, but instead only involved the Deed, the dispute would still have its genesis in the Purchase Agreement because the Deed was executed pursuant to the Purchase Agreement. *See id.* at 643. The dispute about Plaintiff's wells is even more clearly within the arbitration clause when the Court considers the fact that the dispute, at least from Defendants' perspective, involves the Purchase Agreement, the Land Use Restrictions Agreement for the Sanctuary and the Deed. Thus, under the interpretation of "arising out of" expressed in *Sweet Dreams* the arbitration clause in the Purchase Agreement covers the dispute between the parties about the alleged restrictions on Plaintiff's wells. Specifically, the arbitration clause in the Purchase

11

Agreement encompasses the Deed because the Deed had its genesis in the Purchase Agreement.

Plaintiff argues that the Sixth Circuit's decision in *Alticor, Inc. v. National Union Fire Insurance Co. of Pittsburgh, PA*, 411 F.3d 669 (6th Cir. 2005), counsels a different result. In *Alticor* the insurance company sought to compel arbitration "pursuant to an arbitration provision contained not in the insurance policy, but in an ancillary agreement between the parties . . . ." *Alticor*, 411 F.3d at 670. The dispute involved the meaning of "occurrence" in the insurance policy, not the ancillary agreement. *Id.* at 671. Thus, the Sixth Circuit concluded that the dispute was not subject to arbitration. *Id.* at 672. Though the Sixth Circuit in *Alticor* did decline to apply an arbitration clause in one document to a dispute involving a different document, the *Alticor* court carefully considered the relationship between the documents. *See id.* at 671-72 (reviewing the relationship between the documents). The Sixth Circuit in *Alticor* declined to apply an arbitration clause in an ancillary agreement to a dispute about a term in the primary agreement. This is consistent with the analysis from *Sweet Dreams*, because a prior document cannot have its origin or genesis in a later ancillary document, so under *Sweet Dreams* a dispute about the primary document could never arise out of a later ancillary agreement. Therefore, *Alticor* is distinguishable from the matter before the Court, because in the matter before the Court the arbitration clause is in the primary agreement, the Purchase Agreement.

Plaintiff also argues that interpreting the arbitration clause in the Purchase Agreement to cover this dispute violates the requirement of Michigan contract law that a court must

12

"avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v. United Ins. Group Agency*, 468 Mich. 459, 468, 663 N.W.2d 447 (2003). Plaintiff argues that interpreting the arbitration clause in the Purchase Agreement to cover this dispute would deprive the "relating to language" in the arbitration clauses in the Land Use Restrictions Agreement for the Sanctuary and the Land Use Restrictions Agreement for the Property of any meaning. (Land Use Restrictions Agreement for the Sanctuary ¶ 2(f); Land Use Restrictions Agreement for the Property ¶ 2(f).)

First, the Court notes the oddity of Plaintiff's position, which is effectively that because some of the other documents relevant to the dispute contain arbitration clauses that are broader than the clause in the Purchase Agreement, the entire dispute is not subject to arbitration. So under Plaintiff's reasoning if the other documents contained narrower arbitration clauses, then the entire dispute would be more susceptible to arbitration. This reasoning is particularly problematic in consideration of the fact that Defendants' claim about the restriction on Plaintiff's wells relies in part on the Land Use Restrictions Agreement for the Sanctuary which contains one of the broader arbitration clauses. (Petition ¶ 12.); *see also Klapp*, 468 Mich. at 473 ("'The primary goal in the construction or interpretation of any contract is to honor the intent of the parties . . . .'" (quoting *Rasheed v Chrysler Corp*, 445 Mich. 109, 127 n.28, 517 N.W.2d 19 (1994))).

Second, Plaintiff's argument fails to recognize that the "relating to language" takes an arbitration clause that already has broad application and gives the clause even broader

application. The addition of this language may also represent an effort by the parties to add greater clarity about the scope of the arbitration clauses. This latter point is illustrated by the change from "this Agreement" to "this Agreement, or the breach of this Agreement." Under Plaintiff's suggested application of *Klapp*, the addition of "or the breach of this Agreement" means that the earlier arbitration clause does not cover claims based on alleged breaches of the Purchase Agreement. Such a reading of the arbitration clause is contrary to the decisions of courts interpreting "arising out of" and it is contrary to what Plaintiff acknowledges as the scope of the arbitration clause in the Purchase Agreement. (Pl.'s Br. 7.) The Court's interpretation of the scope of the arbitration clause in the Purchase Agreement is consistent with *Klapp* because the additional language in the later clauses gives those clauses a broader scope and clarifies the scope of those later clauses.

The interpretation of the Deed and the resolution of this dispute could not be "maintained without reference to the" Purchase Agreement and the relationship it created. *See Highlands Wellmont*, 350 F.3d at 576. Therefore, the arbitration clause in the Purchase Agreement encompasses the Deed and the dispute about the restrictions that Defendants' allege apply to Plaintiff's wells.

### C. The Appropriate Remedy

One who is subject to an arbitration agreement cannot be allowed "to ignore the contract and resort to the courts" as "[s]uch a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." *Southland*

*Corp. v. Keating*, 465 U.S. 1, 7 (1984). Most district courts in this circuit agree that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice. *See Stout*, 228 F.3d at 714, 716 (affirming district court's dismissal of complaint "without prejudice to reinstatement should further proceedings be needed after arbitration."); *Saneii v. Robards*, 187 F. Supp. 2d 710, 714 (W.D. Ky. 2001) (dismissing complaint without prejudice in light of binding arbitration agreement); *Tanglewood Hospitality Venture, Inc. v. Ogle*, No. 3:05-CV-184, 2005 WL 2060769, at *2 (E.D. Tenn. Aug. 25, 2005) (dismissing without prejudice to enable resolution of dispute by arbitration). "'The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.'" *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)).

### III.

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction is granted and Plaintiff's complaint is dismissed without prejudice. An order will be entered consistent with this opinion.

Date:   December 12, 2006         /s/ Robert Holmes Bell
                                  ROBERT HOLMES BELL
                                  CHIEF UNITED STATES DISTRICT JUDGE